## Litton *v.* Litton

No. 40115 April 9, 1956 86 So. 2d 485

*Smith, O'Hare & Smith,* Cleveland, for appellant..

*W. W. Simmons,* Cleveland; *Kermit R. Cofer,* Water Valley; *Valentine & Valentine,* Rosedale, for appellee.

McGehee, C. J.

On the 4th day of May, 1955, the chancery court rendered a decree at Rosedale, Mississippi, modifying its former decree of May 15, 1953, which had awarded the permanent custody of Carolyn Gene Litton, now nearly ten years of age, to her father, the appellant Michael B. Litton, and provided that the child should be permitted to visit her mother, the appellee Katherine Wagner Litton, "for one month in each calendar year, the said month to be either the month of July or the month of August, whichever month is more suitable to the complainant and defendant; and thát the said child be permitted to visit her said mother at other intervals which will be suitable and convenient to the said defendant Michael B. Litton." This former decree had proved to be unworkable so far as the visits of the child to its mother "at other intervals" were concerned, since it seems that it was never convenient with the father for the child to visit her mother except in July or August. The decree of May 4, 1955, now appealed from, left the permanent custody of the child with its father, but extended the period of the summer visit to its mother who lives at Water Valley, Mississippi, from one month to three months; that is to say, for the months of June, July and August of each year. The father took a direct appeal from the said decree. The mother took a cross-appeal upon the theory that by reason of material changes in the circumstances of the parties since the rendition of the decree of May 15, 1953, coupled with the consequent best interest of the child, she was entitled to the permanent custody thereof, as prayed for in her petition for the modification.

When this cause was heard on May 3rd and 4th, 1955, the child had not visited her mother since the summer of

1954 when it spent a part of the month of July and a part of the month of August in her home at Water Valley. Under the decree appealed from the child's first three-month visit with its mother was to begin June 1, 1955, but four days prior thereto the father perfected his appeal with a supersedeas bond with the result that the mother was not only deprived of the three month visit of the child to her in the summer of 1955, but also of even the one month visit that she was entitled to under the decree of May 15, 1953. Both the petitioner Katherine Wagner Litton and the respondent Michael B. Litton were granted the right of appeal with supersedeas from the decree of May 4, 1955, but Mrs. Litton did not see fit to take an appeal with supersedeas, and evidently for the reason that she wanted the little girl with her during the three months in the summer of 1955 as provided for in the decree appealed from, instead of the one month visit provided for in the decree of May 15, 1953.

The chancellor stated, after hearing the testimony of the petitioner and of her numerous witnesses, including the testimony of the defendant as an adverse witness, and in response to a motion of the defendant to exclude the evidence, that "I see no material change in the parties. This is the same testimony, practically the same except for the fact that Mike Litton had remarried and Mrs. Litton had moved away. None of it would warrant the court in changing the stipulations of the prior decree, * * *." But the court overruled the motion to exclude in order that he might hear all of the testimony, and whereupon the defendant testified again and introduced numerous witnesses to show that he was likewise a person of good character and standing, and suitable to have the continued care and custody of the child.

At the conclusion of all of the evidence the chancellor made a finding of fact, copied in the record, in which he again found among other things, that "there have been

no material changes in the status of the case; none that would authorize the court to make any changes based on testimony that has been heard here. * * * There is nothing in the facts and circumstances that would warrant the court or *authorize* or justify the court in making any changes in the *decree such as are sought* * * * *by the petitioner at this time.* The court is of the opinion, from the testimony, that the attitude of the petitioner in the prior years leading up to this petition here, has placed her in the position of technically, or at least legally, of having abandoned her child. * *.*." (Italics ours). The mother was seeking full custody in the instant case, and there was no adjudication of an abandonment in any prior proceeding.

 █ After a careful examination and study of all of the testimony in the case, we have concluded that there had been such material changes in the circumstances of the parties between the rendition of the decree of May 15, 1953, and May 4, 1955, as would have warranted and authorized the chancellor from a legal standpoint to have changed the permanent custody of the child if he had thought that her best interest and welfare would have been thereby promoted; also, that there had been no abandonment of the child by its mother in a legal sense, in view of her circumstances following the granting of the first decree of divorce to her on September 28, 1948, and the second decree of divorce to her on January 18, 1949, on the ground of alleged habitual cruel and inhuman treatment of her by the child's father.

At the time of the 1953 decree the father of the child was living with his own father and mother and of course they were having a part in the care and custody of the child. He remarried on December 29, 1953, and moved to Rosedale, and has since resided in an upstairs garage apartment which has only one bedroom, and the child has since that time slept in the living room of this apartment. It contains only a shower bath so far as bathing

facilities are concerned. On the other hand, the child's mother and her second husband, Robert Litton, had been living for about one and a half years prior to the decree of May 4, 1955, at Water Valley in the home of her great-aunt Miss Jesse Wagner, whose residence consisted of 14 rooms, including 4 bedrooms and 3 baths, where the child had a bedroom of its own, well equipped, in which she visited her mother during the summers of 1953 and 1954. The great-aunt, the said Miss Jesse Wagner, was 82 years of age, and had executed a will naming the child's mother as sole beneficiary therein, on account of the fact that the latter and her second husband had agreed to live with her. The great-aunt was evidently in good circumstances financially, on the basis of her taxable income. While this change in the mother's situation would not be controlling as to what is to the best interest of the child, or as to which one of the parents is entitled to her custody, the fact remains that it is proof of a material change and that the child's mother is in a better situation to properly care for the child's welfare than she was on May 15, 1953.

Prior to the decree of May 15, 1953, the mother and her second husband had lived in one room, took their meals elsewhere, and because of the mother's employment she could not then devote the time to the child's welfare that she is now able to do.

Since the removal of the child's mother to the home of her great-aunt the second husband is engaged in the business of operating a fleet of ten or more aluminum boats on the backwaters of the Enid Dam where he earns on an average from $20 to $30 per day, and he owns a one-fourth interest in 320 acres of Delta farm land, all in cultivation. The testimony of numerous witnesses who went from Water Valley to Rosedale to attend the hearing gave testimony as to the high esteem in which Mr. Robert Litton, the second husband, and Mrs. Litton and Miss Wagner are held in Water Valley,

and of their love for the child, and of the child's apparent fondness for them. Miss Wagner taught a Sunday School class in the Presbyterian Church until she was 80 years of age, and wants to have a part with the mother in the development of this child spiritually and otherwise. It is likewise true that several witnesses testified as to the good christian character and capabilities of the stepmother and as to the high standing of the appellant at Rosedale, and when the child's father and stepmother were questioned about the scissor stabbing of the former by the latter, resulting in his hospitalization for more than two weeks, they both testified that it was an accident.

 When the child's mother consented to the custody of the child being awarded to its father when each of the two divorces were granted, she had neither a job nor a place to take care of the child. After her marriage to her second husband she had a baby which was born dead and she was in ill health for sometime thereafter. This testimony is undisputed. While the case of Mayfield v. Braund, et ux, 207 Miss. 514, 64 So. 2d 713, was an adoption proceeding, nevertheless the question of what constitutes an abandonment of a child by its natural parent was therein discussed and the Court there said: "While it is true that any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child will import an abandonment, it is stated in 1 Am. Jur., Adoption of Children, 643, Section 42, that 'It does not follow that the purpose may not be repented of and, in proper cases, all parental rights again acquired, including that of preventing adoption by withholding consent, ██ ██ but when abandonment is shown to have existed, it becomes a judicial question whether it really has been terminated, or can be, consistently with the welfare of the child.' "

■ ■ Since the final disposition of this case may vitally affect the entire future welfare of this little girl for years to come, and since it is not our function to invade the province of the chancellor in the determination of what is to the best interest of the child ■ ■ ■— which should be the sole consideration in the determination of the issue of child custody as between its natural parents—we have concluded that this question should be decided by the chancellor wholly uninfluenced by what he may have conceived to be legal impediments to the exercise of his sound judicial discretion in deciding the case on the basis of the best interest of the child. Fearing that he may have been influenced by his thought, although erroneous as we think with deference, that there had been no material changes in the circumstances of the parties since the decree of May 15, 1953, and also by his belief that there may have been a legal abandonment of the child by its mother, ■ ■ We hold, with great deference, that the admitted facts show very material changes in the circumstances of the parties and that according to the undisputed testimony of the mother there has been no settled purpose on her part to abandon the child; that neither of these supposed obstacles now constitute a bar to the right of the mother to have the permanent custody of the child, provided the chancellor should conclude from the evidence that except for these considerations, which may have influenced the decree appealed from, he would be justified in awarding the custody to the mother on the basis of the best interest of the child. ■ ■ We have concluded to reverse in part and remand the case on the cross-appeal for his determination on that basis, either on the testimony contained in this record by consent of the parties, or on a rehearing.

We would unhesitatingly affirm the case on direct appeal except for the fact that our action in so doing would also affirm the right of the father to have the permanent

custody of the child, subject only to the right of the mother to have the child visit her three months instead of only one month of the year, and such affirmance of the case on direct appeal would doubtless warrant the chancellor in declining to grant the relief prayed for by the mother in her petition for modification on a remand of the case, even though he should conclude that the best interest of the child would be thereby promoted. On remand he will be unhampered by the theory that there had been no material change in the circumstances of the parties since May 15, 1953, or by the theory of a legal abandonment of the child on the part of the mother.

In reaching this conclusion we have considered the cases of Boswell v. Pope, 213 Miss. 31, 56 So. 2d 1; Conrad v. Fountain, 202 Miss. 237, 30 So. 2d 803; White v. Brocato, (Miss.) 35 So. 2d 455; Savell v. Savell, (Miss.) 49 So. 2d 726; Sparks v. Sparks, 249 Ala. 352, 31 So. 2d 313; Evans v. Evans, 195 Miss. 320, 15 So. 2d 698; Garner v. Garner, 143 Okl. 183, 288 p. 298; and the numerous other decisions cited both on behalf of the appellant and the appellee.

It follows that the decree must be affirmed in part on both direct appeal and cross-appeal, but only to the extent that it awards to the mother the right to have the child visit her for the months of June, July and August of each year, but without prejudice to her right to a rehearing as to its custody during the remainder of each year; and that the decree must be reversed in part on both direct appeal and cross-appeal and remanded for the purpose of a rehearing on the issue as to what is the best interest of the child in the matter of its permanent custody, leaving out of consideration the finding of the chancellor that there has been no material change in the circumstances of the parties and that there had been a legal abandonment of the child by its mother.

Pending the determination of that issue on remand, the natural mother is entitled to have the child visit her

for the months of June, July and August, beginning June 1, 1956. And in the event the chancellor should, upon a re-examination of the evidence in the light of this decision, determine that the custody of the child should be awarded to its mother he may then provide for the right of the father to have the child with him during said months, beginning in 1957, or during such part of said period as the chancellor in his discretion may deem proper, and of course may otherwise adjust the decree of May 4, 1955, to suit the exigencies of the case, consistent with the purpose of the reversal and remand thereof, hereinbefore stated.

Affirmed in part and reversed in part on both direct appeal and cross-appeal, and remanded.

*Kyle, Arrington, Ethridge* and *Gillespie, JJ.,* concur